# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                CRIMINAL NO. 22-20093

v.                               HON. ROBERT H. CLELAND

THOMAS BERLUCCHI,

       Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

During his tenure with the United States Postal Service, Thomas Berlucchi held significant power—he had authority to unilaterally award no-bid contracts for construction jobs. But instead of protecting the coffers of this struggling agency, he used this power to benefit himself. He pressured contractors to give him things—from construction work to hotel rooms.

The total gains Berlucchi realized were not monumental. But his crime shouldn't be measured by this alone. The contractors willing to engage in this corrupt activity were, unsurprisingly, not trustworthy.

1

Berlucchi, in other words, led a fox into the henhouse. Michael Rymar, a contractor willing to play this criminal game, was fleecing the Postal Service in the jobs that Berlucchi awarded.

The sentencing guidelines for Berlucchi's offense are 8-14 months. But this conduct was very serious. And so the government requests a 14-month sentence.

## Sentencing Guidelines

The sentencing guidelines are "the starting point" and "initial benchmark" in sentencing proceedings. *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007) (citations omitted). Indeed, the "farther the . . . sentence departs from the guidelines . . . the more compelling the justification" must be. *United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007) (internal quotation marks and citations omitted).

Berlucchi pleaded guilty to a violation of 18 U.S.C. § 201(c)(1)(B). So, USSG §2C1.2 is used. (PSR, ¶ 22). The base offense level is 11 due to Berlucchi's status as a public official. (*Id.*). And because the

2

gratuities that he received were over $6,500, a two-point enhancement is given. (PSR, ¶ 23). A two-point acceptance of responsibility reduction applies. (PSR, ¶ 29.) So, the total offense level is 11. (PSR, ¶ 28). Berlucchi has no criminal record and is therefore in Criminal History Category I. (PSR, ¶¶ 31-33). Accordingly, the sentencing guidelines are 8-14 months. (PSR, ¶ 78).

## **Nature and Circumstances of Offense**

This offense was serious. While employed with the United States Postal Service (or "USPS"), Berlucchi accepted bribes for awarding lucrative USPS construction contracts. Given this conduct, a within-guidelines sentence is appropriate.

In 2011, a tipster called the USPS complaint hotline to report Thomas Berlucchi, a USPS employee. (Ex. 1 – Hotline Report). The tipster was a contractor who did work for the USPS. Berlucchi, the tipster explained, could award USPS contracts to him or other contractors. (*Id.*) Berlucchi had "requested gifts" from the tipster "on numerous occasions." (*Id.*). For instance, Berlucchi asked him to install

3

a furnace in his cottage. (*Id.*). But the tipster refused. As a result, Berlucchi stopped awarding him jobs. (*Id.*) In contrast, other contractors like Michael Rymar gave Berlucchi gifts and, in turn, got the USPS jobs. (*Id.*).

This investigation was turned over to the USPS Office of Inspector General (or "OIG"). OIG agents interviewed the tipster on numerous occasions. (*See, e.g.,* Ex. 2 – Memorandum of Interview of tipster). The tipster told the OIG agents the same information he gave to the hotline. (*Id.*). But he provided additional details. For instance, Berlucchi gave him a key to his cottage to install the furnace. Berlucchi also tried to force him to do construction projects at the historic Fort Wayne. (*Id.*). Berlucchi also suggested the tipster hire a painter who would "push an envelope over to you." (*Id.*)

Meanwhile, agents interviewed other witnesses, including some from Rymar's old company, American Materials Handling. After these interviews, Berlucchi met with the tipster again, but was "sweating profusely" and "seemed very nervous." (*Id.*). During this meeting,

4

Berlucchi asked for his key back. (*Id.*). The tipster believed that Berlucchi found out about the investigation through Rymar (who learned of the agents' interviews at his old company). (*Id.*).

Years later and after an unrelated tip, OIG agents investigated jobs performed by Rymar for USPS. They compared documents Rymar submitted to USPS about the projects with information from Rymar's subcontractors (who did the work). They uncovered discrepancies in almost every job.

For example, Rymar claimed that a subcontractor performed part of a job at a New York post office for $6,865 and Rymar's employees did the rest, which cost him $1,422 more. But the subcontractor explained he did all of the work himself and did it for thousands of dollars less than Rymar claimed in his paperwork to USPS. (Rymar was charged separately. The details of the scheme are explained in more detail in the government's sentencing memorandum in that case. E.D. Mich. No. 21-cr-20208, ECF No. 22, PageID.254-55.) In total, Rymar fraudulently obtained over $1.2 million from the USPS. (*Id.*). There were only a few

5

USPS employees who awarded these contracts. Thomas Berlucchi was one of them, and he gave Rymar hundreds of thousands of dollars of USPS work.

The agents had suspicions about Berlucchi's involvement with Rymar, including because of the 2011 tip. And so, when they executed a search warrant at Rymar's house, they also interviewed Berlucchi. (Ex. 3 – Memorandum of Interview of Berlucchi).

Berlucchi lied during the interview. For instance, Berlucchi denied that Rymar ever paid for a hotel room for him. (*Id.*, p.14). But later in the interview, after agents confronted him with documents showing Rymar did pay for his room, Berlucchi explained that he "forgot about that." (*Id.*, p.15). Berlucchi also denied that Rymar ever made any "large donations" to an organization that Berlucchi ran, the Historic Fort Wayne Coalition (or "HFWC"). (*Id.*, p.13). But agents again confronted Berlucchi, this time with $5,000 checks to the HFWC from Rymar's wife. (*Id.*, p.13-14).

Two separate times during the interview, Berlucchi claimed that

6

Rymar never did any work on his house or on his cabin in Atlanta, Michigan. (*Id.*, p.13, 15-16). But this too was a lie. Agents obtained emails from Rymar to Berlucchi's personal email account. In them, Rymar sent photographs of the work that he did—including a new roof on a portion of the cabin, and back and side steps.






The government eventually obtained Rymar's cooperation against Berlucchi. Rymar explained that he did this construction work and

other favors to continue to get USPS jobs from Berlucchi. Rymar said that Berlucchi told him to hide his expenses for this work in other USPS jobs. (Ex. 4 – Tr., p.15-16, *filed under seal*).

Berlucchi eventually pleaded guilty, finally admitting that he accepted things of value from Rymar and, in exchange, provided USPS contracts. (ECF No. 14, PageID.25).

## Unwarranted Sentencing Disparities

The sentencing guidelines help courts avoid disparities of similarly situated defendants, i.e., "[t]he Guidelines exist to help ensure that similarly-situated defendants are punished similarly." *United States v. Vassar*, 346 Fed.Appx. 17, 29 (6th Cir. 2009) (citing *United States v. Boscarino,* 437 F.3d 634, 638 (7th Cir.2006)). "Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly. . . . The more out-of-range sentences that judges impose . . . , the more disparity there will be." *Boscarino*, 437 F.3d at 638.

During this investigation, the government also charged Michael

8

Rymar with a violation of 18 U.S.C. § 641, theft of government money. Rymar eventually pleaded guilty to this offense. The resulting guideline range was 30-37 months. But the government requested a downward departure from that range because of Rymar's cooperation against Berlucchi. And ultimately, Judge Lawson granted that motion and imposed a 15-month sentence.

The government is requesting a lower sentence here. But the reason is *warranted*—Berlucchi's guideline range is significantly lower. (Unlike Rymar, who pocketed over $1 million from the scheme, Berlucchi was only given a few thousand dollars in gratuities.) Accordingly, while the government believes the conduct is serious and warrants a custodial sentence, it follows the "benchmark" provided by the guidelines.

## **Conclusion**

The Court should impose a 14-month custodial sentence.

                                              Respectfully submitted,

                                              DAWN N. ISON
                                              United States Attorney

                                              s/Steven P. Cares
                                              Assistant United States Attorney
                                              211 West Fort Street, Suite 2001
                                              Detroit, Michigan 48226
                                              (313) 226-9139
                                              steven.cares@usdoj.gov

## **CERTIFICATION OF SERVICE**

I hereby certify that on **August 30, 2022**, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

            s/Steven P. Cares (P68503)
            Assistant United States Attorney
            211 W. Fort Street, Suite 2001
            Detroit, Michigan  48226
            Phone:  (313) 226-9139
            E-mail: steven.cares@usdoj.gov